**STATE of Utah, Plaintiff and Appellee,**

v.

**Pamela Malan HIGGINS, Defendant and Appellant.**

No. 910622–CA.

Court of Appeals of Utah.

Aug. 25, 1992.

**10**

Lisa J. Remal, Joan C. Watt (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Todd A. Utzinger (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Pamela Higgins appeals her conviction of attempted possession of a controlled substance, a class A misdemeanor, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1992).[1] We affirm.

## I. FACTS

In the early morning hours of August 21, 1989, the vehicle in which Pamela Higgins was a passenger was stopped by Salt Lake City Police Officer Michael Jensen. Officer Jensen testified that he stopped the vehicle because it matched the description of a vehicle suspected in a reported gas theft at a nearby Seven–Eleven convenience store. Officer Jensen approached the car and questioned the driver, Jim Seeley, about the alleged gas theft. Seeley conceded that he may have forgotten to pay for the gas and agreed to return to the Seven–Eleven to pay for it. Officer Jensen and Officer Rackley, a backup officer who arrived shortly after the stop of Seeley's vehicle, followed the car back to the Seven–Eleven. While Seeley was in the store paying for the gas, the officers ran a warrants check on him, which revealed a warrant for his arrest. Accordingly, the officers arrested Seeley when he exited the store.

Officer Jensen testified that in order to save Seeley the impound fee, the officers offered to allow Higgins to drive the car, on the condition that Higgins was a licensed driver. Seeley agreed. The officers approached Higgins, informed her that they were arresting Seeley, and asked whether she would be interested in driving the vehicle in order to save Seeley the impound fee. She responded affirmatively. Officer Jensen then requested to see Higgins's driver's license, and Higgins replied that she did not have it with her. In order to verify that Higgins had a valid license, Officer Jensen requested her name and date of birth. Higgins provided the requested information, and the officers ran a driver's license check and a warrants check. The warrants check revealed that Higgins had outstanding warrants for her arrest. Accordingly, the officers arrested Higgins and, in a search incident to the arrest, discovered cocaine in her athletic-type bag.

Prior to trial, Higgins moved to suppress the cocaine as evidence illegally seized in violation of her fourth amendment rights, which motion was denied on the basis of the trial court's conclusion that Higgins was not seized for fourth amendment purposes. Higgins subsequently pleaded guilty to attempted possession of a controlled substance, conditional upon preserving her right to appeal the district court's denial of her motion to suppress. *See State v. Sery,* 758 P.2d 935, 938 (Utah App.1988). Higgins appeals, challenging the trial court's conclusion that she was not seized for fourth amendment purposes.

---

1. Under Utah Code Ann. § 58–37–8(2) (Supp. 1992), possession of cocaine is a third degree felony. Utah Code Ann. § 76–4–102(4) (1990) reduces a third degree felony to a class A misdemeanor when the charge is for attempt to commit the proscribed crime rather than actual commission.

## II. STANDARD OF REVIEW

"A trial court's findings of fact underlying its decision to grant or deny a motion to suppress must be upheld unless they are clearly erroneous. However, we review the trial court's legal conclusions in regards thereto under a correction of error standard." *State v. Hunter*, 831 P.2d 1033, 1035 (Utah App.1992) (citation omitted).

## III. ANALYSIS

■ The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Courts have extended that provision to require that "[a]lthough a person has a lesser expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citation omitted). Accordingly, the stopping of an automobile and the consequent detention of its occupants constitute a "seizure" within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *accord State v. Steward*, 806 P.2d 213, 215 (Utah App. 1991).

■ However, the Fourth Amendment does not prohibit all seizures, but only *unreasonable* ones. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). In order to determine whether a seizure is reasonable, we must determine (1) whether the police officer's action was justified at its inception, and (2) whether the officer's action reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*, 392 U.S. at 19–20, 88 S.Ct. at 1879; *accord State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990).

■ As to the first question, the stopping of an automobile is constitutionally justified if the stop is based upon a reasonable and articulable suspicion that an occupant of the vehicle has committed or is about to commit a crime. *State v. Talbot*, 792 P.2d 489, 491 (Utah App.1990). In the case at bar, it is clear that Officer Jensen was justified in stopping the vehicle because it matched the description of a vehicle suspected in a reported gas theft at a nearby Seven–Eleven convenience store. Thus, we proceed to an examination of the reasonableness of Officer Jensen's actions at the initial stop.

■ As to the reasonableness of stopping a vehicle, the United States Supreme Court has stated that the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Likewise, the Utah Supreme Court has held that the length and scope of the detention "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879).

■ In the case at bar, although Officer Jensen did stop the vehicle in which Higgins was a passenger, there is no evidence that Higgins was unreasonably seized at the initial stop. In this regard, the trial court found that (1) "the defendant was not a suspect by Officer Jensen for any criminal wrongdoing;" (2) the "defendant was free at that moment to exit the car, prior to its departure back to the Seven–Eleven, if in fact she so elected;" and (3) "[t]he officers did not have any dialogue with the defendant at the time of the initial stop and at the time the automobile was directed to return to the Seven–Eleven."

All of the trial court's findings are well supported by the evidence. The officers did not ask Higgins any questions, demand to see her identification, or restrict her liberty whatsoever. Officer Jensen stopped the vehicle to question Seeley, and Seeley alone, about the gas theft. The officers' testimony, which the trial court found to be credible, indicates that prior to

approaching Higgins at the Seven–Eleven and asking her whether she wanted to drive Seeley's vehicle, Higgins was never the focus of any inquiry whatsoever. Thus, we conclude that the length and scope of the initial detention were strictly tied to and justified by the circumstances which rendered its initiation permissible. *See id.* Accordingly, we reject Higgins's claim that she was unreasonably seized in violation of her fourth amendment rights at the time of the initial stop.

Higgins further contends that she was seized for fourth amendment purposes when the officers approached her at the Seven–Eleven, inquired whether she would be willing to drive the vehicle, and proceeded to ask her name and birth date. We disagree. We have previously stated, in *State v. Trujillo,* 739 P.2d 85 (Utah App. 1987), that a "seizure within the meaning of the fourth amendment occurs only when the officer by means of physical force or show of authority has in some way restricted the liberty of a person." *Id.* at 87 (citations omitted); *accord Florida v. Bostick,* —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). "When a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation with the officer's investigation, but because he believes he is not free to leave a seizure occurs." *Trujillo,* 739 P.2d at 87 (citation omitted); *accord United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

In *Mendenhall,* the Supreme Court enunciated several examples of police behavior that implicate a seizure:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877 (citations omitted).

Additionally, the Supreme Court has recently reiterated that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to 'disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Bostick,* —— U.S. at ——, 111 S.Ct. at 2386 (quoting *California v. Hodari D.,* 499 U.S. ——, ——, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991)).

■ The police officers' conversation with Higgins solely concerned whether she would be willing and able to drive Seeley's vehicle in order to save him the impound fee. The very nature of the officers' inquiry demonstrates that Higgins, at that point, was free to decline the officers' request and proceed on her way without the vehicle. Additionally, after Higgins responded that she was willing to drive the vehicle and provided the officers with her name and birth date so that they could confirm that she had a valid driver's license, she remained at the scene voluntarily in an effort to cooperate with the officers and to accommodate Seeley, not because she was compelled to stay.

Moreover, there is nothing in the record to indicate that the attending officers used any physical force or exhibited any authority to restrict Higgins's liberty during the encounter at the Seven–Eleven. On the contrary, the trial court found that the exchange between the officers and Higgins was non-confrontational, non-hostile, and cooperative. There was no evidence that the officers displayed weapons, physically touched Higgins, or used language which demonstrated that compliance with the officers' request was required, any of which might suggest that a seizure occurred. *See Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877. Therefore, the trial court did not err in concluding that, under the totality of the circumstances, Higgins was not seized for fourth amendment purposes.

 

## IV. CONCLUSION

For the foregoing reasons, we conclude that the trial court properly denied Higgins's motion to suppress the evidence obtained in the search incident to her arrest. Accordingly, Higgins's conviction is affirmed.

GARFF, J., concurs.

JACKSON, J., dissents.