10 P.3d 159

2000-NMCA-076

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mark Jeffrey GLASGOW,
Defendant–Appellant.**

**No. 19,456.**

Court of Appeals of New Mexico.

June 15, 2000.

Certiorari Denied, No. 26,478,
Aug. 30, 2000.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Judge.

{1}  Defendant appeals his convictions for second-degree murder, aggravated assault, aggravated battery, tampering with evidence, and criminal solicitation to commit tampering with evidence. On appeal, Defendant claims that the evidence was insufficient to support his convictions for second-degree murder, aggravated assault, and aggravated battery. Defendant also contends that the trial court's rulings regarding Defendant's cocaine use on the night of the altercation denied him a fair trial. We conclude that sufficient evidence supported the convictions but that Defendant suffered unfair prejudice from the trial court's change of position in its evidentiary ruling concerning the admission of earlier cocaine use. We therefore reverse and remand for a new trial.

## Facts

{2}  Defendant Mark Glasgow and Joshua Jones (Josh) attended a dance on April 4, 1997. At the dance, Defendant and Josh met their girlfriends, Kelly Brown (Kelly) and Jessica Bibeau (Jessica). Also attending the dance was a separate group, including Eric Strombeck (Eric), Kristen Clopton (Kristen), and Reece Green (Reece). Sometime after 9:00 p.m., Eric went out to his truck to drink beer. A short while later, Kristen and Reece joined Eric in the truck. While the trio was sitting and drinking beer, they saw Defendant and Josh, whom they did not know, walk in front of the truck on their way to their own truck.

{3}  Defendant, Josh, and Eric exchanged words. The testimony conflicts slightly with respect to what actually occurred at that point. According to Eric, Defendant and Josh were yelling so he walked over to them and inquired about what was wrong. Eric testified that Josh got out of his truck, they started yelling at each other, and Josh said, "Go back to your truck, boy." Eric testified that he did not like being called "boy." Eric had a beer bottle in his right hand when he threw the first blow with that hand and hit Josh in the head. The beer bottle flew out of his hand after the first punch. Eric and Josh began exchanging blows. Eric was quite a bit larger than Josh, and he admitted that he was winning the fight with Josh. Eric testified that, while he was fighting with Josh, a loud bang went off and he felt a burning sensation in his hand. He fell to his knees and quit fighting. Eric then felt a hand on his shoulder and a loud bang went off near his ear. After the second loud bang, Josh was lying on the ground.

{4}  According to Defendant, when he and Josh were walking to their truck, the group in the other truck were staring at them. Josh said, "What the ... are you staring at?" Eric got out of the truck and the two started arguing. Eric hit Josh with something that he held in his hand. Josh continued to be hit by Eric and never returned any punches. Defendant told Eric to "[g]et off," but Eric "kept kicking Josh's ass." At that point, Defendant went to his truck and grabbed a gun to break up the fight. Defendant testified that he ran over to the fight yelling, "Break it up." His yelling did not stop Eric from hitting Josh. Defendant kicked Eric and hit him in the

head with the gun causing the gun to discharge. Josh fell to the ground, accidently killed by Defendant's gun. Defendant testified that Eric "turned on" him so Defendant shot the gun again. Defendant stated that when he hit Eric with the gun, he believed that there was a serious problem and that his friend could be hurt, possibly killed by Eric.

{5} Defendant was charged and convicted of aggravated assault and aggravated battery on Eric, as well as second-degree murder of his friend Josh. At trial, Defendant relied on the theories of self-defense and defense of another which require proof that Defendant was reasonably afraid for his own safety or that of his friend.

*Trial Court's Rulings on Cocaine Evidence*

{6} Defendant argues that the trial court prejudiced his case when it changed its ruling with regard to the admission or exclusion of evidence of cocaine use by Defendant. From our review of the trial, it appears that there were two separate instances involving cocaine use. First, Defendant admitted to police that he had used cocaine earlier in the evening prior to going outside with Josh, just before the confrontation took place. Defendant told police: "I was feeling it, the cocaine was making me feel squirrelly. I was paranoid. I was coked up." Second, there was evidence that, just prior to the fight, Defendant and Josh had gone outside to their truck with the intent to use cocaine but had not done so.

{7} According to the record, the trial court heard argument on evidence of cocaine use three times during this trial—during a motion in limine, during voir dire, and in the middle of trial. At the pretrial motion in limine hearing, Defendant asked the trial court to exclude the statement he had made to the police to the effect that he and Josh were going to the truck to do cocaine. Defendant argued that the statement would be irrelevant and unduly prejudicial. At the time Defendant argued to keep out the statement of the plan to use cocaine with Josh, he apparently conceded that the statement referring to his own earlier use of cocaine would be admissible. The trial court ruled that, "We're not going to get into the drugs

in the truck.... [A]ny statement ... that ... they went out to the truck to do drugs isn't going to be relevant." Therefore, at the pretrial hearing to exclude evidence of drug use, it appears that all parties and the trial court were referring to the statement that Defendant and Josh went to the truck to use cocaine—not to Defendant's statement that he had used cocaine earlier in the evening.

{8} During voir dire, Defendant questioned the members of the jury venire about whether the use of alcohol would affect their decision on whether Defendant acted in a reasonable manner. The State interrupted the voir dire and argued that the questioning showed Defendant believed his statement made to police regarding his earlier cocaine use was relevant. Both parties believed at the time that the trial court had previously ruled that all evidence showing Defendant had used cocaine earlier in the evening would not be admitted at trial. The trial court could not recall the previous ruling but stated that Defendant had made it clear that his earlier use of cocaine was relevant to his state of mind. When the trial court asked to be reminded about what had happened at the motion in limine hearing, the parties agreed that the trial court had excluded evidence pertaining to the fact "that they were going to the truck to do some lines." The parties and the trial court continued to discuss the matter. During the rest of the exchange, there appears to be quite a bit of confusion about which statement regarding cocaine use was actually being discussed. Finally, the trial court ruled, "We'll just keep it all out."

{9} The statements were discussed one more time, just before the State called its last witness at trial. The State asked the trial court to again clarify its ruling on the cocaine evidence. The trial court understood its ruling to be that "it would be easier if we just didn't raise it at all." The State protested that, since Defendant was claiming self-defense, Defendant's state of mind was critical to the case and, therefore, the admission that he had used cocaine earlier that night was relevant. The State, in making its argument, made a distinction between the two statements regarding cocaine use, arguing that Defendant's admission that he had used

cocaine earlier should be admitted. Defendant countered that he had relied on the trial court's ruling made during voir dire that the court would "keep it all out," referring to all evidence of drug use, past or future. The trial court declared that it was unaware of Defendant's admission that he had used cocaine, that it believed the evidence to be relevant to Defendant's state of mind, but that admission of the evidence at that point might possibly prejudice Defendant. Ultimately, the trial court changed its position and ruled that, if Defendant took the stand and testified about his own state of mind, the door would be opened to cross-examination by the State as to his statements to police about cocaine use. Defendant argues that this change of position by the trial court, in the middle of trial, unfairly prejudiced his ability to persuade the jury that he was acting in self-defense.

*Prejudice Resulting from the Trial Court's Ruling*

{10} Up to the point of voir dire, Defendant had reason to believe that his cocaine use earlier in the evening would be admissible into evidence at trial. He had not filed a motion in limine in that regard. During voir dire, the court squarely addressed the question. The following exchange took place:

> The Court: We are going to either have all the cocaine stuff or we are going to leave it out. If I let her get into this part of the statement that says he used earlier in the evening, then you have this presupposition. You argue that is prejudicial to your client and that the jurors are going to say he was on cocaine all evening long. Was he still under the influence of cocaine? I *don't know.* But that's certainly beyond the inference the jury is going to draw. If we have no evidence that it was in his blood—was he tested?
>
> [Prosecutor]: No. He just says he was doing it with the other person earlier in the evening, that's my understanding of the evidence.
>
> [Defense Counsel]: Judge, people are reacting to their emotions of alcohol. If you want to interchange drugs, then I think we have got to individually voir dire them, quite frankly.
>
> [Prosecutor]: Oh, please, Steve.
>
> [Defense Counsel]: On drugs in relation to homicide.
>
> The Court: We'll just keep it all out.

At the time of this exchange during voir dire, the trial court balanced the probative and prejudicial value of the earlier cocaine use and ruled that it would not admit such evidence. Consequently, defense counsel did not conduct voir dire concerning the beliefs of the potential jurors about drugs or drugs in relation to homicide. He had the right to plan his defense strategy relying on the trial court's ruling that there would be no evidence of drug use introduced to the jury.

{11} When the trial court later changed its ruling, Defendant was placed at a disadvantage. After the State had presented several witnesses at trial, the court decided that if Defendant took the stand and testified about his state of mind during the shooting, he would subject himself to cross-examination about his earlier use of cocaine. This circumstance is exactly what Defendant was earlier led to believe would not occur. Because defense counsel did not have the opportunity to question potential jurors during voir dire about their attitudes toward drugs, Defendant could reasonably have been uncertain as to whether he could testify about his state of mind in such a manner as to risk introduction of the evidence of his cocaine use earlier in the evening.

{12} Defendant argues on appeal that because of the trial court's final ruling, he was forced to testify about self-defense or defense of another without emotion and without providing explanation about how he was feeling while trying to protect his friend. According to Defendant, the trial court's ruling inhibited Defendant's ability to persuade the jury that he was genuinely concerned for his own safety and for the safety of his friend Josh, evidence that goes to the heart of a theory of self-defense or defense of another. The record does show that Defendant was able to present the basis of his defense in his testimony, in that he was able to tell the jury that he believed Eric was the aggressor, that he was afraid for his friend, that he was

afraid for himself, and that he acted in order to protect his friend. The question is whether Defendant was forced to restrict the manner of his testimony and its persuasiveness.

{13} The State argues that there is nothing in the record to support Defendant's claim. It asserts that Defendant made no offer of proof or other showing below which would direct this Court to determine how his testimony would have been different had the trial court not ruled as it did. The State is correct, but only to a point.

{14} Our criminal trial system entitles a defendant to formulate a strategy to defend the charges brought by the State. *See* N.M. Const. art II, § 14; *March v. State,* 105 N.M. 453, 456, 734 P.2d 231, 234 (1987) (acknowledging a criminal defendant's right to a fair trial, right to appear, and right to present a defense). Any defense strategy, of course, is confined by the law and the rules of evidence and procedure. But even if the evidentiary rules are not properly applied, the right to a fair trial is not impaired unless the defendant can show prejudice. *See State v. Allen,* 2000–NMSC–002, ¶ 46, 128 N.M. 482, 994 P.2d 728 (stating that a defendant must demonstrate prejudice in connection with ruling on admissibility of evidence unless a substantial right is affected); *State v. Jett,* 111 N.M. 309, 312, 805 P.2d 78, 81 (1991) (stating that evidentiary ruling is reversible error upon an abuse of discretion and a showing of prejudice). Such prejudice must be more than speculative. *See In re Ernesto M.,* 1996–NMCA–039, ¶ 10, 121 N.M. 562, 566, 915 P.2d 318, 322 ("An assertion of prejudice is not a showing of prejudice."). However, inconsistent application of the rules may have a prejudicial effect upon defense strategy. We believe this case is an example of such prejudice based upon Defendant's inability to question potential jurors about possible drug-use evidence. *See State v. Orona,* 92 N.M. 450, 452, 589 P.2d 1041, 1043 (1979) ("No more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant.").

{15} We base this conclusion on Defendant's right to an impartial jury. *See* N.M. Const. art II, § 14; *Fuson v. State,* 105 N.M. 632, 633, 735 P.2d 1138, 1139 (1987) ("The New Mexico Constitution guarantees the right to trial by an impartial jury."); *State v. Sanchez,* 58 N.M. 77, 84, 265 P.2d 684, 688 (1954) ("There is ... no question that the right to trial by a fair and impartial jury is a fundamental right of the accused."). Rule 5–606(D) NMRA 2000 provides for peremptory challenges of jurors by both the State and the defense in a criminal case. "'[T]he right to challenge has little meaning if it is unaccompanied by the right to ask relevant questions on voir dire upon which the challenge for cause can be predicated.'" *State v. Ortiz,* 88 N.M. 370, 374, 540 P.2d 850, 854 (Ct.App.1975) (quoting *Ham v. South Carolina,* 409 U.S. 524, 532, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973)) (Marshall, J., dissenting in part and concurring in part). Because of the potential impact of evidence of cocaine use, Defendant wished to address the evidence with the jury on voir dire. Without the opportunity to do so, defense counsel could not be certain that the jury was impartial with regard to the subject of drug use. If the subject had not arisen at trial, there would not have been a problem. That was the state of the case after the trial court's initial ruling at voir dire.

{16} Relying on the ruling at voir dire, the defense understandably would plan its strategy accordingly. The circumstances changed, however, when the trial court changed its ruling to raise the specter of admitting the drug use testimony. If Defendant had testified about his "state of mind" after this ruling, the cocaine use evidence would have been admitted. At that point in the trial, defense counsel did not have the ability to exercise any challenges to jurors arising from the potential impact of such testimony. But because of the trial court's ruling, any state-of-mind testimony offered by Defendant would have been restricted in a manner not previously anticipated. Yet, it was imperative that Defendant testify without restriction to show that he lacked the requisite state of mind because state of mind is highly relevant to self-defense and defense of another. *See* UJI 14–5171 NMRA 2000; UJI 14–1572 NMRA 2000.

{17} The emotional content of testimony is an intangible aspect of trial and is difficult, at the very least, to abstract from a transcript on appeal. We cannot therefore rely upon the dispassionate transcript of the trial to reflect the lack of emotion in Defendant's testimony. Nor can we expect Defendant to make a record of the manner in which his testimony would have been more emotional. Rather, we glean prejudice in this case from the record of the observations made by the State and the trial court regarding the importance of voir dire on drug-use evidence. In this regard, the State acknowledged during argument to the trial court about the scope of voir dire that Defendant's evidence of drug use could have an impact on the jury. Before its final ruling, the trial court specifically acknowledged the impact on the· defense of Defendant's inability to address the subject with the jury: "I am afraid that as [defense counsel] implies, it casts a whole different light upon the defense. It casts a whole different light on voir dire."

{18} The State characterized Defendant in its closing argument as lacking emotion and used that characterization to its advantage in challenging Defendant's claims of self-defense and defense of another. In addition, defense counsel acknowledged to the court that in his direct examination of Defendant "he went as close to the edge as [he] could," indicating at least some restriction on defense counsel from what he would otherwise have done on direct. We believe that, as a result, the trial court's change of position infringed upon Defendant's opportunity to challenge jurors who may have been unable to impartially judge the facts of the case, to Defendant's prejudice. Accordingly, Defendant was denied his right to a fair trial.

{19} The State additionally argues that it is unlikely that Defendant was prejudiced because of the substantial evidence against him, including his conflicting statements to friends and police. This argument is akin to a harmless error analysis that we would apply if the trial court had erred on an evidentiary ruling. *See State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980) (applying harmless error analysis to admission of evidence).

{20} Error in the admission of evidence is harmless when there is no "reasonable possibility" that the improperly admitted evidence "might have contributed to the conviction." *State v. Castillo–Sanchez,* 1999–NMCA–085, ¶¶ 25–26, 127 N.M. 540, 984 P.2d 787 (quoting *State v. Torres,* 1999–NMSC–010, ¶ 52, 127 N.M. 20, 976 P.2d 20). In this case, although, as we discuss below, substantial evidence supported the verdicts, Defendant raised plausible defenses which turned on Defendant's state of mind and credibility. The evidence of guilt was not overwhelming, nor was the evidence that Defendant was the aggressor or that he was not justified in his actions. *See Moore,* 94 N.M. at 504, 612 P.2d at 1315 (stating that harmless error occurs when substantial evidence supports the verdict, the admissible evidence is overwhelming in proportion to the improperly admitted evidence, and no testimony rebuts the improperly admitted evidence). We believe that the trial court's change of position in its rulings on cocaine evidence, which impaired Defendant's opportunity to voir dire potential jurors, could have affected the outcome of the trial.

{21} Nonetheless, we wish to emphasize the narrow scope of our holding. At trial, one mistake seemed to compound another with respect to the admissibility of drug evidence. Both parties and the court shared the blame. The degree of error below on this issue, and its fateful timing, drive the result in this appeal. That special set of circumstances limits our holding.

*Sufficiency of Evidence*

{22} Although we reverse because of the trial court's inconsistent rulings, we nevertheless review the sufficiency of the evidence because retrial would be barred if the evidence were insufficient to support Defendant's convictions. *See State v. Rosaire,* 1996–NMCA–115, ¶ 20, 123 N.M. 250, 939 P.2d 597. In doing so, we view the evidence in the light most favorable to the judgment, and we review whether any rational factfinder could have found that the essential elements of the crime were established beyond a reasonable doubt. *See State v. Garcia,* 114 N.M. 269, 273–74, 837 P.2d 862, 866–67

(1992). We disregard all inferences and evidence contrary to the verdict. *See State v. Montoya,* 116 N.M. 297, 304, 861 P.2d 978, 985 (Ct.App.1993).

{23} Defendant was convicted of second-degree murder. NMSA 1978, § 30–2–1(B) (1994) defines second-degree murder as follows:

> Unless he is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse commits murder in the second degree if in performing the acts which cause the death he knows that such acts create a strong probability of death or great bodily harm to that individual or another.

Second-degree murder does not require that Defendant intended to kill Josh. *See State v. Lopez,* 1996–NMSC–036, ¶ 21, 122 N.M. 63, 920 P.2d 1017. It requires only that Defendant knew that his actions created a strong probability of death to another. *Id.*

{24} Defendant claims that he is not guilty of second-degree murder because he was sufficiently provoked by the fact that his friend "was being severely beaten" by Eric. Alternatively, Defendant claims that he is not guilty because he was acting in self-defense or defense of another. With respect to these claims, Defendant argues that the State failed to present sufficient evidence to support the conviction of second-degree murder by failing to prove: (1) that there was not sufficient provocation; (2) that Defendant did not act in self-defense; and (3) that Defendant did not act in defense of another.

*Provocation*

{25} The Uniform Jury Instructions define provocation as follows:

> "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

UJI 14–222 NMRA 2000. Defendant argues that there was sufficient provocation to pull out a gun and defend his friend, who was being beaten by Eric.

{26} Viewing the evidence in the light most favorable to the verdict, there was ample evidence presented showing lack of provocation in this case. For example, the State presented evidence indicating that Defendant began the altercation, and actually provoked the situation. Defendant admitted that he got Josh "riled up" by pointing out that the group in the truck was staring. Defendant testified that he expected a fight and removed his hat as is his practice when he expects a fight. Eric testified that Defendant began the encounter by raising his hands and yelling. Josh and Defendant approached Eric's truck and made threats to hurt Eric. After threatening to hurt Eric, Josh began poking his finger into Eric's chest. Kristen testified that Defendant and Josh walked toward the truck and asked what Eric and Reece were looking at while using obscenities and yelling. Kristen testified further that Defendant and Josh appeared to be "agitated or angry." Kristen believed that Defendant and Josh were trying to provoke Eric and Reece. Reece testified that Defendant and Josh walked toward their own truck, but Defendant did not get into the truck. Instead, Defendant looked at the occupants of the other truck, then backed out of his truck, started walking closer to the truck where Eric was sitting, and began exchanging words. Reece testified that, while Eric and Josh were fighting, Defendant ran up to Eric with the gun, and then he heard shots.

{27} In addition, there was evidence that the fight had been going on for only a very short time and only a few punches were thrown before Defendant shot Josh and Eric. When asked how long Eric had been fighting with Josh before the first shot, Eric stated, "[n]ot too long." Jonathan Kimmel, an eyewitness, testified that before the shots were fired, the fight had not been going on long. He testified that it was "[q]uick like seconds." On cross-examination, Jonathan repeated that the fight was not "long drawn-

out .... It was just quick." Kristen testified that two or three punches were thrown and after another two or three seconds, she saw Defendant move toward the fight and she heard a gunshot and saw a flash. The short time period lends credence to the State's position that Defendant did not act as a result of sufficient provocation.

{28} Viewing the evidence in the light most favorable to the State, the jury could reasonably find that Defendant instigated the fight, immediately retrieved the gun from the truck, and fired. This evidence contradicts Defendant's claim that he was provoked. We recognize that there was conflicting evidence that might support a finding of provocation. However, our standard of review demands that we view the evidence in the light most favorable to the verdict. *See Montoya*, 116 N.M. at 304, 861 P.2d at 985.

### Self-Defense and Defense of Others

{29} Defendant additionally argues that he was acting in self-defense or in defense of Josh when he used the gun. He claims that sufficient evidence does not support the convictions of second-degree murder, aggravated battery, and aggravated assault because the State did not prove that he was not acting in self-defense or defense of another. Self-defense or defense of another requires a "reasonable belief in the necessity for the use of deadly force to repel an attack in order to save oneself or another from death or great bodily harm." *State v. Coffin*, 1999–NMSC–038, ¶ 12, 128 N.M. 192, 991 P.2d 477. The evidence must show that an objectively reasonable person, put into Defendant's situation, would have believed that Defendant or another person was being threatened with death or great bodily harm, and that use of deadly force was necessary to prevent that injury. *See State v. Duarte*, 1996–NMCA–038, ¶ 8, 121 N.M. 553, 915 P.2d 309.

{30} The State introduced evidence from which the jury could infer that Eric did not pose an immediate danger of death or great bodily harm to Josh or to Defendant, that the shooting was not a result of Defendant's fear of death or great bodily harm to himself or others, and that a reasonable person in De-

fendant's situation under the same circumstances would not have acted as Defendant did. *See Coffin*, 1999–NMSC–038, ¶ 13, 128 N.M. 192, 991 P.2d 477. As we noted above, there was sufficient evidence that the fight was initiated by Defendant and lasted only seconds before Defendant shot Eric and Josh. *Cf. State v. Lucero*, 1998–NMSC–044, ¶¶ 7–8, 126 N.M. 552, 972 P.2d 1143 (stating that self-defense claim is not available or may fail if the evidence shows that the defendant was the instigator of the altercation). Defendant believed that Josh was normally a competent fighter and able to take care of himself. In other words, Josh, who was known to Defendant to be a competent fighter, was involved in an altercation that lasted only seconds before Defendant decided to pull out a gun and shoot into the fray. Based on this evidence, the jury could reject Defendant's claim that he was acting out of fear for himself or Josh and could conclude that a reasonable person in the same circumstances as Defendant would not have used deadly force.

### Conclusion

{31} For the reasons stated above, we reverse and remand for a new trial.

{32} **IT IS SO ORDERED.**

APODACA and BOSSON, JJ., concur.