This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **NO. 28,580**

**JOSE ANTONIO HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**H.R. Quintero, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O' Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant Jose Antonio Hernandez raises two issues on appeal: (1) he challenges the sufficiency of the evidence to support his conviction for second degree murder, and (2) he challenges the sufficiency of the evidence to support the jury instruction on first-degree murder. For the reasons that follow, we affirm.

**STANDARD OF REVIEW**

We review the sufficiency of the evidence pursuant to a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (alteration in original) (internal quotation marks and citation omitted). This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We will not substitute our judgment for that of the factfinder, nor will we reweigh the evidence. *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

**BACKGROUND**

In light of the foregoing principles, we summarize the pertinent evidence as follows.

Defendant and Richard Cuellar (the Victim) were involved in an ongoing feud. There were reports and testimony regarding an incident in which the Victim pistol-whipped Defendant. There were also reports and testimony regarding verbal threats made by the Victim against Defendant and his family.

On October 10, 2003, police received a report of a disturbance at Defendant's home. Defendant explained that the Victim had come to the house looking for a fight and that he and his two brothers had beaten the Victim in the back yard. Minutes later, the police found the Victim, who was visibly in physical distress and who confirmed that he had been beaten up. About an hour thereafter, the police responded to Defendant's report that the Victim had returned and hit one of Defendant's brothers in the head with a makeshift sling. In the course of the ensuing conversation, Defendant expressed his dissatisfaction with the police response and indicated that he would take care of it himself. After stating that he was carrying an SKS assault rifle in his car, Defendant began asking about self-defense. The officer urged Defendant not do anything that would get him put in jail. Defendant responded, "I don't give a . . . ."

A month later, Defendant and his brother were driving around in Defendant's

Camaro. They passed a blue pickup truck driven by Larry Hinojosa. Anthony Alvarado was in the passenger seat, and the Victim was seated in the middle. The Victim indicated that he wanted to talk to Defendant and his brother, so Hinojosa and Alvarado flagged them down. The Camaro made a U-turn and trailed the pickup truck until it came to a stop.

Alvarado got out of the vehicle first. As the Victim began to exit, Defendant shot him twice with his SKS rifle. Jess Powell, a neighborhood resident who was in his front yard at the time, heard the first shot. When he looked up, he saw the gun barrel sticking out the driver's side window of the Camaro. After the second shot was fired, Powell saw the brake lights illuminated as if the vehicle was being put in gear and then saw the vehicle proceed down the street in no apparent hurry. The vehicle swerved as the driver pulled the gun barrel back inside and then turned at an intersection and drove away.

After hearing the shots, Hinojosa looked over and saw the Victim holding onto the passenger seat, bleeding all over his back and side. He later reported that to his knowledge, the Victim never had a weapon. Powell rushed over to the truck, where he found the Victim gasping for air with a look of utter amazement on his face. Powell similarly reported that, to his knowledge, no one at the scene other than the shooter in the Camaro had a weapon.

4

When police arrived, the Victim was halfway out of the truck, with his head and shoulders on the floorboard and his lower extremities outside. Efforts by medical personnel to revive him were unsuccessful. A pathologist later found two gunshot wounds to the Victim's back, one in the lower left area and the other on the right buttock near the hip. The pathologist concluded that the Victim's death was a homicide caused by the two gunshot wounds.

Several hours after the shooting, Defendant called the police to tell them that he was the shooter. He then gave a statement in which he confessed to shooting the Victim twice in the back with an SKS rifle. The police later recovered the rifle from a trailer, where Defendant indicated that he had placed it.

At the scene of the shooting, police detectives found two shell casings that matched the rounds in the SKS rifle in caliber, casing, and color. A ballistics report further indicated that a bullet fragment recovered from the Victim's body had been fired from Defendant's rifle. In processing the crime scene, the police found no evidence that any other weapons were involved.

**SECOND DEGREE MURDER**

First, Defendant challenges the sufficiency of the evidence to support his conviction. In order to support a conviction for second degree murder, the State was required to prove that: (1) Defendant killed the Victim; (2) Defendant knew that his

5

acts created a strong probability of death or great bodily harm; (3) Defendant did not act as a result of sufficient provocation; (4) Defendant did not act in self-defense; and (5) this happened in New Mexico on or about the 9th day of November, 2003. *See* NMSA 1978, § 30-2-1(B) (1994) (defining second degree murder); UJI 14-210 NMRA (describing the elements of second degree murder).

The evidence previously described provides ample support for each of the elements of the offense. Both the eyewitness accounts and Defendant's confession are sufficient to establish that Defendant killed the Victim. The second element, knowledge that his acts created a strong probability of death or great bodily harm, may be inferred from the evidence that Defendant shot the Victim twice with an assault rifle. *See generally State v. Motes*, 118 N.M. 727, 729, 885 P.2d 648, 650 (1994) ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)). The third and fourth elements, absence of provocation and lack of self-defense, are supported by the eyewitness testimony and the physical evidence at the crime scene indicating that the Victim was shot in the back as he was exiting the vehicle and that the Victim did not have a weapon. *Cf. State v. Glasgow*, 2000-NMCA-076, ¶¶ 26-30, 129 N.M. 480, 10 P.3d 159 (holding that the evidence was sufficient to establish absence of provocation and lack of self-defense where the

6

defendant instigated the fight, immediately retrieved a gun from the truck, and fired the fatal shot). Finally, the time, date, and location were established by the testimony of the eyewitnesses and the police investigators. In summary, we conclude that the evidence established each of the elements of the offense, such that the conviction is adequately supported.

In this appeal, Defendant focuses his challenge on the sufficiency of the evidence to establish the fourth element, lack of self-defense. In this context, a killing is in self-defense if "[t]he defendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [the victim] because of that fear." UJI 14-5171 NMRA. Self-defense requires a "reasonable belief in the necessity for the use of deadly force to repel an attack in order to save oneself . . . from death or great bodily harm." *State v. Coffin*, 1999-NMSC-038, ¶ 12, 128 N.M. 192, 991 P.2d 477. "The evidence must show that an objectively reasonable person, put into Defendant's situation, would have believed that Defendant . . . was being threatened with death or great bodily harm, and that use of deadly force was necessary to prevent that injury." *Glasgow*, 2000-NMCA-076, ¶ 29.

As support for his claim of self-defense, Defendant relies on his own statement to police that the Victim had pointed a gun at him and was about to shoot. However, the jury was free to reject Defendant's version of the events. *See State v. Mireles*,

119 N.M. 595, 597, 893 P.2d 491, 493 (Ct. App. 1995) ("Although Defendant testified that the shooting was in self-defense and that he did not intend to kill anyone, the jury was free to reject Defendant's testimony.").

As previously mentioned, the State presented the testimony of two eyewitnesses to the shooting, both of whom testified that the Victim did not appear to have a weapon. The crime scene investigators' findings were consistent with this testimony. The jury could therefore have concluded, based on the State's evidence, that the Victim did not have a weapon and did not present a threat at the time of his death, such that Defendant's use of deadly force was unjustified. We therefore uphold the conviction for second degree murder.

**FIRST DEGREE MURDER**

Defendant also contends that the evidence was insufficient to support the jury instruction on first degree murder. Defendant was convicted of second degree murder, rather than first degree murder. For the reasons stated above, the conviction was supported by the evidence. Under such circumstances, Defendant's challenge to the instruction on first degree murder does not appear to be properly before us. *See State v. Garcia*, 57 N.M. 665, 667, 262 P.2d 233, 234-35 (1953) (holding that the submission of first degree murder to the jury was harmless error, even if it was unsupported by the evidence, when the defendant was convicted of murder in the

second degree), *rev'd on other grounds,* 78 N.M. 578, 434 P.2d 697 (1967); *State v. Horton*, 57 N.M. 257, 259, 258 P.2d 371, 372 (1953) (rejecting an argument that the jury was improperly instructed on first degree murder in the absence of evidence to support such a conviction, on grounds that such error was not prejudicial insofar as the defendant was convicted of the lesser offense of manslaughter, which was supported by the evidence).

Moreover, there appears to have been sufficient evidence to support the instruction on first degree murder. As described above, Defendant had been involved in an ongoing feud with the Victim and had indicated a month before the fatal shooting that he intended to take matters into his own hands. His inquiries about self-defense further suggest that he was already contriving such a claim, although his subsequent statement that he did not care if he wound up in jail is consistent with a willingness to proceed notwithstanding the potential consequences of his conduct. Finally, the evidence that Defendant fatally shot the Victim twice in the back, before the Victim had even exited the vehicle, provides additional support for the inference that Defendant had formulated a deliberate intent to kill the Victim. *See Coffin*, 1999-NMSC-038, ¶ 76 (rejecting the defendant's argument that he did not have enough time to weigh and consider the killing and affirming conviction for first degree murder when the defendant shot the victim several times in the back and the

evidence suggested that the killing was retributive); *see also State v. Salazar*, 1997-NMSC-044, ¶ 46, 123 N.M. 778, 945 P.2d 996 (holding that testimony that the defendant pursued the victim, pointed a gun, and fired, together with evidence of past conflicts between the defendant and the victim, provided adequate support for an inference that the defendant acted with deliberate intent to kill the victim); *cf. State v. Duran*, 2006-NMSC-035, ¶ 8, 140 N.M. 94, 140 P.3d 515 ("Deliberate intent may be inferred from the particular circumstances of the killing as proved by the State through the presentation of physical evidence."). Insofar as the instruction was adequately supported by the evidence, we reject Defendant's assertion of error.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____

**LINDA M. VANZI, Judge**