1996–NMCA–115

939 P.2d 597

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Louis ROSAIRE, Defendant–Appellant.**

**No. 16474.**

Court of Appeals of New Mexico.

Sept. 27, 1996.

Certiorari Granted Dec. 23, 1996.

Tom Udall, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, for Appellee.

Rita LaLumia, Santa Fe, for Appellant.

## OPINION

FLORES, Judge.

1. Defendant appeals his conviction of escape from the state penitentiary inmate-release program, contrary to NMSA 1978, Section 33–2–46 (Repl.Pamp.1990). He raises six issues on appeal: (1) whether the trial court erred in instructing the jury as to the charge of escape from the inmate-release program; (2) whether there is sufficient evi-

dence to support Defendant's conviction; (3) whether the trial court erred in refusing to admit witness Sullivan's testimony or memorandum into evidence; (4) whether Defendant's equal protection rights were violated as a result of the conviction and sentence for escape from the inmate-release program; (5) whether Defendant received ineffective assistance of counsel; and (6) whether there was cumulative error. We reverse and remand for a new trial on the grounds that Uniform Jury Instruction (UJI), NMUJI 1996, 14–2228, fails to instruct the jury on all the essential elements of the crime of escape from the inmate-release program. We also address Issues 2 and 4 and determine that, although they would provide Defendant with greater relief, they are without merit. We do not address the remaining issues.

### FACTUAL BACKGROUND

2. The facts are basically undisputed. Defendant was in the custody of the New Mexico Department of Corrections pursuant to a judgment and sentence in a prior unrelated case. At all times material to this appeal, Defendant was serving his sentence at the Camp Sierra Blanca correctional facility (CSB) in Fort Stanton, New Mexico. On September 23, 1994, Defendant was granted a forty-eight-hour furlough from CSB to acquire housing in Albuquerque. The furlough started at 8:30 a.m. on September 23 and ended at 8:30 a.m. on September 25. The furlough was granted in anticipation of Defendant's parole, which was approximately forty-five days away. During the forty-eight-hour furlough, Defendant agreed to stay with his mother-in-law and not drive a vehicle.

3. In order to get from CSB to Albuquerque, Defendant made arrangements to borrow a Blazer truck and drove to Albuquerque on September 23. The next day, he located an apartment. According to Defendant, that evening he left Albuquerque and drove to some property he had owned in Bernalillo County to pick up some personal property. Defendant arrived at the property, at about 10:30 or 11:00 p.m., and began to look for, and sort out, any personal property of his that was left there. While at the property,

Defendant drank about four beers. When Defendant proceeded to leave, at about 3:00 a.m., the Blazer would not start. Defendant was aware that he had to leave by 4:30 a.m. to get back to CSB by 8:30 a.m.

4. Defendant attempted to fix the Blazer, but could not get it started. At approximately 4:30 a.m., Defendant quit working on the Blazer and decided to wait for daylight. Defendant fell asleep and awoke at about 12:30 or 1:00 p.m. At that time, Defendant knew he was already late returning to CSB. Defendant continued working on the Blazer and eventually got it started, at which time he immediately drove in to Albuquerque arriving there at approximately 5:45 p.m.

5. On the way to Albuquerque, Defendant stopped at the first service station he saw and called CSB. Defendant spoke to Sergeant Dennis Hill and told Sergeant Hill that he had car trouble. Sergeant Hill testified that he advised Defendant to get back to CSB any way he could.

6. Defendant stopped at his mother-in-law's house in Albuquerque to arrange for money to be given to his prospective landlord. At approximately 8:15 p.m., he started back to CSB. On the way, the Blazer broke down again. Defendant again worked on the Blazer and fixed the problem. Defendant called CSB from Carrizozo, New Mexico, at approximately 5:50 a.m. on September 26 and spoke with Sergeant Edward Vega, who advised his supervisors that Defendant was on his way to CSB and logged in Defendant's call. Defendant finally arrived at CSB at approximately 6:30 a.m., September 26, 1994, twenty-two hours late from his furlough. Shortly after his arrival, he was charged with escape from CSB.

### DISCUSSION

I. *Jury Instructions*

■ 7. Defendant argues that the trial court erred in instructing the jury under the UJI for escape from the inmate-release program, NMUJI 14–2228, because it did not contain the statutory element of "willfulness," an essential element of the crime of escape from the inmate-release program. We agree.

8. Initially, we point out that our Supreme Court has held that this Court "is *not* precluded from considering error in jury instructions, but is precluded only from overruling those instructions that have been considered by [the Supreme Court] in actual cases and controversies that are controlling precedent." *State v. Wilson*, 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994). Because the UJI at issue, NMUJI 14–2228, has not been addressed by our Supreme Court, we may consider Defendant's arguments regarding the error in that jury instruction.

9. The escape statute under which Defendant was charged and convicted states, in part: "Any prisoner whose limits of confinement have been extended, or who has been granted a visitation privilege under the inmate-release program, who *willfully* fails to return to the designated place of confinement within the time prescribed, with the intent not to return, is guilty of an escape." Section 33–2–46 (emphasis added).

10. At trial, the jury was instructed with the standard UJI instruction as follows:

For you to find the Defendant guilty of escape from the state penitentiary inmate-release program, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The Defendant was committed to the state penitentiary;

2. The Defendant was released from the penitentiary to visit Albuquerque, New Mexico;

3. The Defendant failed to return to confinement within the time for his return;

4. The Defendant did not intend to return within the time fixed;

5. This happened in New Mexico on or about the 25th day of September, 1994.

NMUJI 14–2228.

11. The jury was also given the general intent instruction which reads as follows:

In addition to the other elements of Count I: Escape From Work Release, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the Defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, his conduct and any statements made by him.

NMUJI 1996, 14–141.

12. Defendant objected to the UJI on escape from the inmate-release program because it failed to contain the statutory element of "willfulness," and requested an alternate instruction which was refused by the trial court.

13. Defendant's requested jury instruction reads as follows:

For you to find the Defendant guilty of escape from the state penitentiary inmate-release program, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The Defendant was committed to the state penitentiary;

2. The Defendant was released from the penitentiary to visit Albuquerque, New Mexico;

3. The Defendant wilfully failed to return to confinement within the time for his return;

4. The Defendant did not intend to return;

5. This happened in New Mexico on or about the 25th day of September, 1994.

The trial judge refused Defendant's requested instruction because it modified the UJI for escape from the inmate-release program by adding the word "willfully" in paragraph No. 3 and deleted the language "within the time fixed" at the end of paragraph No. 4.

14. Defendant argues that "willfully," as set out in the statute, is an essential element of the crime of escape from the inmate-release program and the standard UJI given to the jury did not correctly reflect the statutory definition of the crime charged because it omitted "willfully" as an element. The State argues that the instructions given to the jury adequately defined the element of

"willfulness" necessary to convict Defendant of escape under Section 33–2–46 and thus, Defendant was not entitled to his requested jury instruction.

■ 15. A plain reading of the statute leads us to conclude that "willfully" is an essential element of the crime of escape from the inmate-release program which differs from the UJI requirement that Defendant have the "intent not to return." In contrast, the State argues that "[b]ecause the jury had to find that [D]efendant did not intend to return within the time fixed, such a finding implies that the jury determined his failure to return was willful." We do not agree with the State that the instruction given to the jury adequately covered the essential elements of the crime because we believe the legislature intended that "willfully" have a different meaning than "with the intent not to return."

■ 16. We interpret "willfully," as used in Section 33–2–46, to mean a conscious, purposeful failure to return within the time fixed as distinguished from an involuntary failure to return. No New Mexico decision has interpreted the word "willfully" as used in Section 33–2–46. However, in *Newsome v. Farer*, 103 N.M. 415, 708 P.2d 327 (1985), our Supreme Court applied the following definition of "willful" to a petitioner's failure to follow court-ordered procedures for the production of documents: " '[A] willful violation of a [court order] is any conscious or intentional failure to comply therewith, as distinguished from accidental or involuntary noncompliance, and ... no wrongful intent need be shown to make such a failure willful.' " *Id.* at 421, 708 P.2d at 333 (quoting *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 202, 629 P.2d 231, 278 (1980)), *appeal dismissed*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981) (alteration in original).

17. This definition of "willfully" is consistent with several other jurisdictions that have interpreted the meaning of that word in their escape statutes. In *State v. Danforth*, 97 Wash.2d 255, 643 P.2d 882, 884 (1982) (en banc), while on work release, two prisoners, who were alcoholics, became intoxicated and failed to return to the work release center. In determining that the prisoners should have been charged with the more specific crime of "willfully" failing to return to a work release program, rather than the general crime of escape, the Washington Supreme Court reasoned that the specific requirement that defendants' conduct be willful under the statute which makes it a crime to willfully fail to return to a work release program,

> recognizes a valid legislative distinction between going over a prison wall and not returning to a specified place of custody. The first situation requires a purposeful act, the second may occur without intent to escape. It is easy to visualize situations where a work release inmate failed to return because of a sudden illness, breakdown of a vehicle, etc. This explains the requirement of willful action.

*Id.; see also Robinson v. State*, 18 Md.App. 438, 306 A.2d 624, 626–27 (Md.Ct. Spec.App.1973) (stating that court decisions "appear to agree that [the term "willful"] denotes an act which is self-determined, voluntary, or intentional and it is used to distinguish an intentional act from an involuntary one"); *Lambert v. Commonwealth*, 6 Va.App. 360, 367 S.E.2d 745, 747 (1988) (stating that mere failure to return from a furlough or contact local police is not sufficient to support a conviction where crime is defined by a willful failure to do a certain act; prosecutor must establish "circumstances that warrant an inference that the failure to act was intentional or by design").

18. Furthermore, we do not agree with the State's position that the language in Section 33–2–46, which states "with the intent not to return," relates back to the previous clause in the statute so as to mean "with the intent not to return within the time prescribed," as NMUJI 14–2228 essentially provides. Instead, we interpret this language to stand independently, so that it means "with the intent *never* to return." If, as the State asserts, "willfully" and "intent" have the same meaning, and the intent not to return element relates back to "within the time prescribed," this results in the legislature repeating the same element twice: (1) "willfully fails to return ... within the time prescribed"; and (2) "with the intent not to

return" "within the time prescribed." We must give effect to every part of a statute, reconciling different provisions so as to make them harmonious. *See Varoz v. New Mexico Bd. of Podiatry,* 104 N.M. 454, 456, 722 P.2d 1176, 1178 (1986).

19. Lastly, our holding here is consistent with *State v. Clifford,* 117 N.M. 508, 873 P.2d 254 (1994), which we find analogous to this case. In *Clifford,* the defendants were charged, inter alia, with embezzlement. The trial court gave a series of instructions which followed the language of the UJI on embezzlement. *Id.* at 511, 873 P.2d at 257. The trial court also gave the jury a uniform general intent instruction. *Id.* The embezzlement instructions given "did not instruct the jury that it needed to find that the defendants acted with fraudulent intent," *id.,* as required by the statute, *see* NMSA 1978, § 30–16–8 (Cum.Supp.1996), to convict them of the embezzlement charges. *Clifford,* 117 N.M. at 511, 873 P.2d at 257. Our Supreme Court reversed the defendants' convictions and held that "the general intent instruction as given does not correct the error propagated by the failure to instruct on fraudulent intent." *Id.* In reversing, the Court reiterated its holding in *State v. Bunce,* 116 N.M. 284, 861 P.2d 965 (1993), that "the failure to include an essential element in the elements instruction can never be corrected by including the concept elsewhere in the instructions." *Clifford,* 117 N.M. at 511, 873 P.2d at 257. In addition, here, as in *Clifford,* Defendant submitted an instruction on the applicable essential element which was refused by the trial court. Thus, we need not resort to application of the doctrine of fundamental error, and we hold that the trial court's failure to instruct the jury on the essential element of willfulness was reversible error under NMRA 1996, 5–608(A) (requiring instruction on all essential elements). *See* NMRA 1996, 5–608(A); *Clifford,* 117 N.M. at 511–12, 873 P.2d at 257–58 (distinguishing fundamental error analysis from reversible error where the defendant submitted requested jury instruction which was refused by the trial court). In sum, we hold that the jury instruction suggested by Defendant was correct and should have been given to the jury in the form submitted.

## II. *Sufficiency of the Evidence*

20. Although we reverse on the ground that the jury instruction patterned after NMUJI 14–2228 was erroneous in that it failed to instruct the jury on the essential element of "willfulness," we review the sufficiency of the evidence in light of the erroneous jury instruction. Defendant argues that there was insufficient evidence to convict him of the crime of escape from the inmate-release program because Section 33–2–46 requires a finding that Defendant willfully failed to return on time, while the trial court failed to instruct on that element. However, our review of the sufficiency of the evidence is analytically independent from the issue of the defect in the jury instruction, *cf. Lockhart v. Nelson,* 488 U.S. 33, 38–39, 109 S.Ct. 285, 289–90, 102 L.Ed.2d 265 (1988) (retrial after reversal based on trial error *not* barred by Double Jeopardy Clause *unless,* in addition to defect in trial proceedings, the defendant is entitled to reversal based on insufficient evidence). This Court instead reviews the evidence in light of the *defective* jury instruction given below for the same reason that, in cases where we reverse based on error admitting evidence at trial, we review the sufficiency of *all* the evidence below, including the wrongfully admitted evidence. *See, e.g., State v. Post,* 109 N.M. 177, 783 P.2d 487 (Ct.App.1989). In *Post,* this Court followed the United States Supreme Court's holding in *Lockhart,* that "when a trial court erroneously admits evidence that is excluded on appeal, and the remaining evidence is insufficient to support a verdict, double jeopardy does not preclude a retrial." *Post,* 109 N.M. at 181, 783 P.2d at 491. In such cases, "[i]f all of the evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred." *Id.* Similarly, we hold that where the trial court errs by failing to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant under the erroneous jury instruction.

21. Following this standard, we consider all of the evidence in support of conviction under the erroneous jury instruction to

determine whether Defendant is entitled to acquittal as opposed to retrial. In this regard, this Court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in the light most favorable to the judgment. *State v. Garcia*, 114 N.M. 269, 273–74, 837 P.2d 862, 866–67 (1992). Here, it is undisputed that Defendant returned to CSB twenty-two hours late. Moreover, the jury received a general intent instruction, which permitted it to infer from the fact that Defendant failed to return on time that he had no intent to return on time. *See* NMUJI 14–141. Given that the jury was free to disregard Defendant's version of the incident, *see State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988), the jury had sufficient evidence to reasonably convict based on the undisputed fact that Defendant failed to return on time. Because there was sufficient evidence to convict Defendant under the erroneous instruction submitted to the jury, we hold that retrial is permissible and remand for a new trial consistent with this opinion.

### III. *Equal Protection*

22. Defendant argues for the first time on appeal that prosecuting him under Section 33-2-46 was unconstitutionally arbitrary in violation of his right to equal protection, because the correctional facility where he was incarcerated had an administrative procedure for punishing inmates who fail to return on time and such a procedure led authorities to determine that his actions did not warrant reprimand. We may review issues raised for the first time on appeal, in our discretion, if they involve questions of fundamental error. NMRA 1996, 12–216(B)(2). "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). There was no fundamental error in the prosecution of Defendant under the statute prescribing this conduct merely because an administrative policy existed to sanction the same behavior. *Cf. State v. Madrigal*, 85 N.M. 496, 501, 513 P.2d 1278, 1283 (Ct.App.) (imposition of a sentence authorized by statute is not deprivation of equal protection absent a showing of what factors the court considered improper), *cert. denied*, 85 N.M. 483, 513 P.2d 1265 (1973). The record in this case is devoid of any facts indicating that (1) Defendant was singled out for prosecution while others similarly situated were not, and (2) this was animated by intentional or purposeful discrimination. *See State v. Cochran*, 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct.App.) (prima facie case for violation of equal protection by selective prosecution requires these two elements), *cert. denied*, 112 N.M. 308, 815 P.2d 161 (1991). Here, we have no basis to conclude Defendant's prosecution under the statute constituted a denial of equal protection, much less amounted to fundamental error. *See State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (the rule of fundamental error applies only in exceptional circumstances in which there has been a miscarriage of justice, or if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand).

23. In support of his equal protection argument, Defendant relies on a New Mexico Supreme Court memorandum opinion in *State v. Sandoval*, No. 21,263 (filed July 20, 1995). *Sandoval* was unpublished, has no precedential value, and should not have been cited. *See* NMRA 1996, 12–405(C). "Unpublished opinions are not meant to be used as precedent; they are written solely for the benefit of the parties. Because the parties know the facts of the case, a memorandum opinion may not describe fully the critical facts upon which the case was decided. When the facts of a case are not fully known, it is not possible to know whether it can be accurately distinguished from similar cases." *Winrock Inn Co. v. Prudential Ins. Co.*, 122 N.M. 562, 568, 928 P.2d 947, 953 (Ct.App. 1996) (citations omitted). Thus, Defendant errs in relying on *Sandoval* for his equal protection argument.

## CONCLUSION

24. For the foregoing reasons, we reverse the trial court for failing to instruct the jury on the essential element of "willfulness" for the crime of escape from the inmate-release program, and remand for a new trial, at which time the jury shall be instructed on the element of willfulness.

25. **IT IS SO ORDERED.**

BUSTAMANTE and ARMIJO, JJ., concur.