This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          NO. 30,541

**JOSHUA GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Steven L. Bell, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Defendant appeals his conviction for involuntary manslaughter. This Court issued a memorandum opinion affirming Defendant's conviction and denying his motion to amend the docketing statement to add issues that we concluded were not viable on direct appeal. Defendant has timely filed a motion for rehearing. We grant Defendant's motion in order to issue this amended opinion, which corrects a misstatement in our original opinion that certain taped statements were of a phone conversation when they were in fact obtained during a police interview. We deny the motion for rehearing in all other respects.

**Motion to Amend the Docketing Statement**

This Court will grant a motion to amend only if certain requirements are met, including that the issues sought to be raised must be viable. *See State v. Sommer*, 118 N.M. 58, 60, 878 P.2d 1007, 1009 (Ct. App. 1994) (denying the defendant's motion to amend the docketing statement when the argument offered in support of amendment was not viable). Defendant's motion to amend seeks to add three claims of error for consideration on appeal. The first raises a claim of fundamental error with respect to a jury instruction that the Defendant himself requested over the State's objection. [MIO 2, 6-20; DS 7] However, fundamental error has no application where a defendant invites an error. *See State v. Handa*, 120 N.M. 38, 46, 897 P.2d 225, 233 (Ct. App. 1995). Defendant's second issue relates to a jury instruction on proximate

2

cause, which Defendant acknowledges he never requested. [MIO 2, 28-31] But our Supreme Court has held that there is no fundamental error when the district court fails to give an instruction that merely provides a further definition of or elaboration on an element of an offense. *See State v. Munoz*, 1998-NMSC-048, ¶ 47, 126 N.M. 535, 972 P.2d 847 (finding no fundamental error when the district court failed to give that portion of the proximate cause instruction that permits a determination of culpability even when there is evidence that more than one person may have contributed to a victim's death). Finally, Defendant seeks to add a claim that the district court erred in omitting a statement in the judgment that Defendant's parole is to be served concurrently with parole in another case. [MIO 2, 31-32] Defendant's argument is based on what he believes the district court actually intended to put in the judgment, a matter that we will not consider on appeal. Defendant is free to seek amendment of the judgment in the district court to the degree that he believes the error was simply a clerical error arising from an oversight or omission. *See* Rule 5-113(B) NMRA. Because we conclude that none of these issues is viable on direct appeal, we deny Defendant's motion to amend the docketing statement.

**Officer Presence During Voir Dire**

Defendant contends that the district court erred in permitting police officers who were witnesses in the case to remain in the courtroom during voir dire. [DS 7-8]

In Defendant's docketing statement he asserted that the district court's ruling was in violation of Rule 11-615 NMRA, as well as his right to due process. [RP 7-8] Defendant now concedes that this did not constitute a violation of Rule 11-615. [MIO 27]

In this Court's notice of proposed summary disposition, we stated that Defendant had provided no explanation of how the presence of the officers deprived him of a fair trial and that he had provided no authority that would support this as a basis for reversal of his convictions. We stated that when a party cites no authority to support a claim of error, we assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). In Defendant's memorandum in opposition, he states that the jurors "exhibited notable discomfort in answering" questions about their attitude towards drug use—including their own drug use—and that the jurors "did not appear to be responding candidly." [MIO 27] Defendant asserts that we should therefore conclude that he was deprived of a right to an impartial jury because his convictions must have been based on jurors' assumptions about known drug users. As we are unable to determine how we could know from the record that jurors were in fact made uncomfortable by the police presence, rather than by the nature of the questions themselves, in light of the fact that they were being asked in a court of law, in front of a judge, attorneys, and other members of the public,

4

we cannot conclude that the officers' presence had any impact at all on voir dire. Furthermore, we find no reason to conclude that jurors' general conclusions about the violent propensities of drug users must have played a role in their determination that Defendant should have known that he was putting the victim in danger. It would seem just as likely that the determination was based on the particular evidence in this case: that Defendant knew that Chavella's brother was angry with the victim, that the victim was taking great care to hide from Chavella's brother and Little Frankie, and that the heated emotional state of Chavella's brother provided Chavella's brother with an interest in finding the victim that was serious enough that he was willing to pay Defendant to have Defendant lure the victim out of hiding.

**Sufficiency of the Evidence**

Defendant contends that there was insufficient evidence to support his conviction for involuntary manslaughter. [DS 8] "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotation

5

marks and punctuation omitted).

Although Defendant contends that the instruction on involuntary manslaughter that he himself proffered was erroneous, it is against this instruction that we evaluate the sufficiency of the evidence. *See State v. Vasquez*, 2010-NMCA-041, ¶ 15, 148 N.M. 202, 232 P.3d 438; *see also State v. Rosaire*, 1996-NMCA-115, ¶¶ 20, 21, 123 N.M. 250, 939 P.2d 597. In order to find Defendant guilty of involuntary manslaughter, the State was required to prove beyond a reasonable doubt that Defendant asked the victim to come out of the house, that Defendant should have known of the danger involved in his actions, that he acted with a willful disregard for the safety of others, and that his act caused the death of the victim. [RP 82]

In our notice of proposed summary disposition, we proposed to hold that, viewing the evidence in the light most favorable to the verdict, a reasonable juror could have found beyond a reasonable doubt all of the elements of involuntary manslaughter as set forth in the jury instruction. Defendant's docketing statement indicated that the following evidence was introduced at trial: Defendant owed the victim money for drugs. Little Frankie, a friend of Defendant's, told Defendant that the victim had a romantic interest in a woman named Chavella and that Chavella's brother was angry at the victim. Little Frankie and Chavella's brother said they were having a hard time finding the victim, whom they believed was hiding from them.

6

They said they thought Defendant would be able to get the victim to let his guard down, and that they would pay Defendant's debt to the victim if Defendant could get the victim to come out of his hiding place. Defendant then made a number of phone calls, trying to reach the victim. In the phone calls, Defendant stated that he had the money he owed the victim and wanted to pay him. Defendant determined where the victim was hiding, and the three men went to that location. Defendant went to the door, and asked for the victim. The victim came out of the house and began following Defendant. He was then shot by either Little Frankie, Chavella's brother, or both. At trial, recordings of statements Defendant made to the police were played for the jury in which Defendant suggested that he knew on the day of the shooting that something bad would happen to the victim if he followed Defendant out of the house.

In Defendant's memorandum in opposition, he asserts that there is a factual dispute about some of the information he provided to this Court in the docketing statement. [MIO 24] In Defendant's docketing statement, he informed this Court that the taped statements that were played for the jury "suggest[ed] [Defendant] knew that nothing good was going to happen to [the victim] when and if he came out of the house at Defendant's request." [DS 5-6] In his memorandum in opposition, Defendant attempts to create an issue of fact by now telling the Court that this was a mischaracterization. [MIO 24] Even if we were inclined to accept Defendant's later

7

description as opposed to his initial one, we nevertheless would not reverse on this basis. Assuming that Defendant's taped statements were actually about his fear and disbelief about what had just occurred, the remaining evidence described above provided a sufficient basis for a reasonable juror to conclude that Defendant should have known of the danger to the victim.

Accordingly, for the reasons stated in this amended opinion and in our notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

8