The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 30, 2023

**No. A-1-CA-39045**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CRYSTAL SIVILS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Michael H. Stone, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**IVES, Judge.**

{1}     After a jury trial, Defendant Crystal Dawn Sivils was convicted of conspiracy to commit bringing contraband into a jail. *See* NMSA 1978, § 30-28-2 (1979) (conspiracy); NMSA 1978, § 30-22-14(B) (2013) (bringing contraband into a jail). On appeal, Defendant argues that (1) fundamental error occurred in the manner the jury was instructed on the elements of the offense; and (2) there was insufficient evidence to support her conviction.[1] As to the first argument, we agree with Defendant. The district court gave the jury an instruction on the offense of conspiracy that deviated from the applicable uniform instruction, UJI 14-2810 NMRA, and the given instruction omitted essential elements of the offense. We conclude that this instruction was erroneous, and although Defendant did not object to it at trial, we reverse Defendant's conviction under the doctrine of fundamental error. As a result, we consider Defendant's sufficiency claim for the purpose of determining whether principles of double jeopardy bar retrial. Defendant argues, and the State agrees, that we should measure the evidence against the actual essential elements of conspiracy, rather than erroneous instructions given at trial. On this legal question, we believe some tension exists within New Mexico precedent and between

---

[1]Defendant also argues that she received ineffective assistance of counsel at the trial level. Because we reverse her sole conviction on other grounds, we do not reach this claim of error.

a New Mexico precedent and a precedent of the United States Supreme Court. Because the parties have not addressed that tension, we decline to resolve the legal question, and we instead assume without deciding that the parties are correct. Measuring the evidence against the actual elements of conspiracy, we conclude that the evidence sufficed and that retrial is therefore permissible.

**BACKGROUND**

{2}     At trial, the State adduced evidence of the following facts. On the morning of April 11, 2017, a detective with the Lovington Police Department was using the men's restroom at the Lovington Magistrate Court when he spotted what appeared to be a "white balloon" in the courthouse urinal. Upon further investigation, the officer discovered that the interior of this balloon contained a variety of pills, what appeared to be marijuana, a handcuff key, some matches, and an unidentified "squishy substance." Later lab analysis confirmed that the contents included marijuana and methamphetamine.

{3}     The investigating officer suspected that the balloon was likely a "dead drop," which is an item dropped off in a specific location by one person for later pickup by another person. To identify potential recipients of the balloon, another officer investigated whether any people who were incarcerated had been scheduled to appear in the Lovington Magistrate Court around the time the contraband was discovered. That officer found that, on the morning the balloon was found, two men

being housed at the Lea County Detention Center had attended hearings. Although neither had asked to use the restroom, law enforcement officers reviewed recent phone calls made by these two men to look for "any suspicious conversations between those two inmates [and] other outside people." The officers determined that one of the men, Aaron Gutierrez, had spoken with Defendant in the days before and after the balloon was discovered. At the time of these conversations, Defendant and Mr. Gutierrez were engaged to be married.

{4} Two such recorded conversations, one of a jail call and another of a jail visit, were admitted into evidence. In the first conversation, Mr. Gutierrez said that someone would be calling Defendant to "give [her] a rundown on some stuff" about which Defendant "already kn[e]w," to which Defendant answered, "Yeah." Mr. Gutierrez then told Defendant that this caller would "tell [her] everything," including "how it's going to go, how you do it, where to do it." In the same conversation, Mr. Gutierrez told Defendant that she would need to "borrow [a friend's] baby" so that Defendant could "go to the men's room for [Mr. Gutierrez]," or get "somebody that can do it." In the second conversation, which was recorded the day after the contraband was found in the urinal, Defendant talked to Mr. Gutierrez about some gold or red "balloons" that she had ordered "for [a] wedding," and said, "I think something happened to the order, it didn't go through."

3

{5} When interviewed by investigating officers, Defendant confirmed that after speaking to Mr. Gutierrez, she had received a phone call and subsequently picked up a "package" from a third party—the girlfriend of a man who was incarcerated with Mr. Gutierrez. She was told by this third party to get someone to put this package in the men's restroom at the Lovington Magistrate Court. However, despite these acknowledgements, Defendant told the interviewing officer that she did not know the contents of the package, nor did she know why Mr. Gutierrez wanted her to meet with the third party.

{6} When Defendant testified, she did not dispute receiving the box from the third party, or that she was told to get the package into the men's room. However, she denied any knowledge about what was "going on," and stated that her comments during the second conversation regarding balloons pertained to decorative balloons for her upcoming wedding with Mr. Gutierrez. She also denied any knowledge of the contents of the package itself, and stated that never saw a "balloon"—only a box.

{7} The jury found Defendant guilty of conspiracy to commit bringing contraband into a jail. She appeals.

**DISCUSSION**

**I.      The Jury Instructions Are Fundamentally Erroneous**

{8} Defendant contends that fundamental error occurred because the jury received an instruction on the offense of conspiracy that did not include the essential elements

4

of the offense. Specifically, Defendant argues that when the district court instructed the jury on the elements of conspiracy to commit bringing contraband into a jail, it departed from the applicable uniform instruction, UJI 14-2810, and instead gave a "hybrid instruction" that incorporated aspects of the crime of conspiracy as well as the conspiracy's target offense of bringing contraband into a jail. Relying on the doctrine of fundamental error, Defendant argues that the error in the instruction warrants reversal even though Defendant failed to object to the instruction at trial. *See* Rule 12-321(B)(2)(c) NMRA (stating that an appellate court may, in its discretion, consider a claim of fundamental error for the first time on appeal). We agree for the reasons that follow.

{9}    Fundamental error exists if it would "shock the [court's] conscience" to affirm the conviction, *State v. Barber*, 2004-NMSC-019, ¶ 14, 135 N.M. 621, 92 P.3d 633, either because of "the obvious innocence of the defendant," *id.* ¶ 16, or because "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* ¶ 17. As our Supreme Court recognized over a century ago, the fundamental error doctrine requires an appellate court to perform a difficult and often high-stakes inquiry. *See State v. Garcia*, 1914-NMSC-065, ¶¶ 17-21, 19 N.M. 414, 143 P. 1012 (opinion upon rehearing). On the one hand, we must consider the judiciary's imperative to protect fundamental rights (even when claims of error have not been preserved). *See id.* ¶ 18. On the other hand, we must not

invoke the doctrine "in aid of strictly legal, technical, or unsubstantial claims." *Id.* ¶ 19.

{10} As it pertains to jury instructions, fundamental error analysis follows two steps. *State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448. First, we determine whether error occurred. *See id.* Thus, our review "begins at the same place as our analysis for reversible error." *Barber*, 2004-NMSC-019, ¶ 19. Our task is to "determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* Importantly, "juror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

{11} If we conclude that the jury instruction was erroneous, we move to step two, asking whether that error was fundamental. *Ocon*, 2021-NMCA-032, ¶ 8. The scope of this analysis is broad: we "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 19 (internal quotation marks and citation omitted). The "failure to instruct the jury on an essential element, as opposed to a definition, *ordinarily* is fundamental error." *Id.* ¶ 20 (emphasis added); *see State v. Osborne*,

1991-NMSC-032, ¶ 38, 111 N.M. 654, 808 P.2d 624. However, not every failure to instruct on an essential element amounts to fundamental error. *State v. Orosco*, 1992-NMSC-006, ¶ 17, 113 N.M. 780, 833 P.2d 1146. Under two exceptions to the general rule, which we discuss below, the omission of an essential element does not amount to fundamental error. *See Ocon*, 2021-NMCA-032, ¶¶ 9-12.

{12} In Defendant's case, this analysis leads us to conclude that the jury instruction at issue was erroneous because its omission of essential elements would be misleading or confusing to a reasonable juror, and that the error here is fundamental because neither of the exceptions applies. We explain our rationale for each conclusion in turn.

**A.     The Jury Instruction for Conspiracy Erroneously Omitted the Essential Elements of the Offense**

{13} Defendant was tried on a single charge of conspiring to bring contraband into a jail. *See* § 30-28-2(A) ("Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state."). In New Mexico, the offense of conspiracy has two essential elements: (1) an intentional agreement, manifested by words or acts, to commit the offense which is the object of the conspiracy; and (2) the intention to commit the offense which is the object of the conspiracy. *See State v. Saiz*, 2017-NMCA-072, ¶ 23, 404 P.3d 422; *accord* UJI 14-2810. Each element entails a different mens rea: "Conspiracy in New Mexico requires both an intent to agree and an intent to commit the offense which is the

7

object of the conspiracy." *State v. Baca*, 1997-NMSC-059, ¶ 51, 124 N.M. 333, 950 P.2d 776. The actus reus is the formation of the agreement—an act that our Supreme Court has called the "gist" of conspiracy. *State v. Deaton*, 1964-NMSC-062, ¶ 5, 74 N.M. 87, 390 P.2d 966. These essential elements are set forth in the uniform jury instruction that our Supreme Court has approved for use in conspiracy cases, UJI 14-2810. Had the district court used UJI 14-2810, the jury would have been instructed that the State had to prove, in pertinent part, two essential elements: (1) that "[t]he defendant and another person by words or acts agreed together to commit [bringing contraband into the jail]" and (2) that "[t]he defendant and the other person intended to commit [bringing contraband into the jail]."

{14}   Instead of instructing the jury in accordance with UJI 14-2810, the district court gave the jury only one instruction regarding conspiracy, Instruction No. 4, which identifies the essential elements in pertinent part as: (1) "Defendant knowingly and voluntarily conspired to have a co-conspirator carry contraband into the confines of a county or municipal jail"; and (2) "Defendant knew she was carrying contraband." Although precedent required the district court to give UJI 14-2810 "without substantive modification," *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775, the failure to give a mandatory instruction does not automatically warrant reversal. *State v. Dominguez*, 2014-NMCA-064, ¶ 18, 327 P.3d 1092. Rather, "it is the failure to give a mandatory instruction on the law

8

essential for a conviction that constitutes reversible error." *Id.*; *see* UJI-Criminal General Use Note ("To avoid fundamental error, it is the duty of the court to properly instruct the jury on the law."). As such, we must determine whether Instruction No. 4 "fairly and accurately state[s] the applicable law" of conspiracy. *State v. Hamilton*, 1976-NMSC-082, ¶ 23, 89 N.M. 746, 557 P.2d 1095. We conclude that it does not. To explain, we consider each element of Instruction No. 4 in turn.

{15}    The first element of Instruction No. 4 is an unhelpful circular statement. The jury was told, in effect, that to convict Defendant of conspiracy to bring contraband into a jail, it was required to find that Defendant conspired to carry contraband into a jail. This first element failed to convey to the jury either of the actual essential elements of the crime; it provided no guidance whatsoever about the specific meaning of the term "conspiracy" under New Mexico law.

{16}    These gaps are not filled by the second element of Instruction No. 4. The second element does not say anything about the actus reus for conspiracy—an agreement between Defendant and at least one coconspirator. As to mens rea, the second element asks the jury to consider a question only tangentially related to Defendant's conspiracy charge: whether "Defendant knew she was carrying contraband." That is the mens rea for the offense which was the object of Defendant's conspiracy: bringing contraband into a jail. *See State v. Gonzalez*, 2005-NMCA-031, ¶ 16, 137 N.M. 107, 107 P.3d 547 (noting that "[t]he offense of

9

bringing contraband into a jail . . . has a mens rea essential element: knowledge of the possession"). But it is not the mens rea for conspiracy. Conspiracy involves two separate intent requirements: (1) intention to form the agreement; and (2) intention "to commit the offense which is the object of the conspiracy." *Baca*, 1997-NMSC-059, ¶ 51. Whether or not "Defendant knew she was carrying contraband" might relate circumstantially to the actual mens rea requirements for conspiracy, but it is not conclusive proof of either of them. Not everybody who knowingly carries contraband has intentionally formed an agreement with others or aims to bring that contraband into a place of imprisonment. Thus, the second element of Instruction No. 4 asked the jury to determine whether Defendant was guilty of conspiracy based on an inaccurate and misleading statement regarding the actual mens rea for conspiracy.

{17}   In sum, because Instruction No. 4 omitted the essential elements of conspiracy, it failed to provide the jurors with "an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12. We therefore conclude, as to the first step of the fundamental error analysis, that the given instruction would mislead or misdirect a reasonable juror and that the instruction was erroneous. *See id.* We now turn to step two in the analysis.

**B.    The Error Is Fundamental**

{18}    Although the omission of an essential element "ordinarily is fundamental error," *Barber*, 2004-NMSC-019, ¶ 20, our precedents describe two exceptions "under which the omission of an essential element does *not* amount to fundamental error." *Ocon*, 2021-NMCA-032, ¶ 9. Here, as we will explain, neither exception supports affirmance.

{19}    The first exception applies when the jury implicitly finds that the state has proven the omitted element. *See id.* ¶ 10. This occurs when the jury makes a specific finding that—in the context of the facts and circumstances of the case—necessarily includes a finding of the omitted element. *See generally id.* (collecting and analyzing the precedents of our Supreme Court applying this exception, beginning with *Orosco*, 1992-NMSC-006.

{20}    The first exception does not support affirmance here because we are unable to conclude that the jury implicitly found the essential elements of conspiracy. It is not clear that by making the findings called for by Instruction No. 4, the jury effectively determined the elements of conspiracy. To begin, we see no such effective determination in the jury's actual finding that Defendant "knew she was carrying contraband." This actual finding does not necessarily include a finding as to either the actus reus or the two intents essential to the crime of conspiracy. The only other actual finding made by the jury pertained to the circular part of Instruction No. 4,

11

and the circularity makes it impossible to determine whether the jury implicitly found the omitted essential elements. The jury found that "Defendant knowingly and voluntarily conspired to have a co-conspirator carry contraband into the confines of a county or municipal jail." The meaning of this finding is a mystery. We decline to speculate that whatever meaning the jury assigned to the word "conspired" happened to match or encompass the essential elements of the offense of conspiracy under New Mexico law. Accordingly, we conclude that the first exception does not support affirmance.

{21}     The second exception only applies when "the jury's verdict, considered together with the given instructions and the parties' legal and factual presentations, leaves no doubt that the jury *would have found* the omitted element if properly instructed." *Ocon*, 2021-NMCA-032, ¶ 11; *see also id.* ¶¶ 11-12 (discussing New Mexico Supreme Court case law applying this exception, focusing on *State v. Stevens*, 2014-NMSC-011, ¶¶ 42-46, 323 P.3d 901). Importantly, this second exception is narrow and will support affirmance only when "proof of the omitted element is so strong that no rational jury could have failed to find that element" and, even if the evidence is that strong, the missing element was not "'disputed' or 'in issue' at trial." *Ocon*, 2021-NMCA-032, ¶ 12.

{22}     The second exception does not support affirmance here because at least one of the omitted elements was clearly "disputed" at trial. *See id.* (internal quotation

marks omitted). Specifically, much of Defendant's evidence was introduced to raise doubt about whether Defendant and another person "agreed together" to bring the contraband into the jail. *See* UJI 14-2810. For example, to raise doubts about the State's theory that the jail conversations between Defendant and Mr. Gutierrez demonstrated knowledge of—and acquiescence to—the scheme, Defendant testified that these conversations concerned decorative balloons and flowers for their future wedding, as well as Defendant's work as a certified florist. Relatedly, Defendant testified that she "didn't know what [Mr. Gutierrez] meant" when she was told by him that someone "was going to call [her]" regarding an unspoken matter. More generally, Defendant testified that she was "manipulated" and "used"—implying that she was an unwitting aid to the criminal enterprise. Whatever the ultimate persuasive power of Defendant's testimony, we believe that her testimony was "evidence or suggestion in the facts, however slight, that could have put the element" of intentional agreement in issue. *Orosco*, 1992-NMSC-006, ¶ 10. Accordingly, we cannot affirm her conviction under the second exception to the fundamental error doctrine.

{23} Because neither of the exceptions applies, and the jury was not instructed on either of the essential elements of conspiracy, we apply the general rule and hold that the omission of the essential elements of the offense of conspiracy amounted to fundamental error. We therefore reverse Defendant's conviction

13

## C. We See No Basis for Affirmance in the State's Arguments

{24} The State acknowledges that some form of instructional error occurred but contends that such error is not fundamental. We believe that this contention misses the mark because the State misunderstands Defendant's claim of error. Instead of confronting Defendant's arguments regarding Instruction No. 4, the State argues that a separate jury instruction—Instruction No. 3—is not fundamentally erroneous.[2] As such, the State's arguments on appeal do not squarely address Defendant's claim of fundamental error, which—as we have seen—is based entirely on issues related to Instruction No. 4.

{25} Even putting this confusion aside and construing the State's brief to argue that we should look to the content of Instruction No. 3 to assist in our analysis of Instruction No. 4, we see no sound basis for affirmance. Instruction No. 3 is simply not pertinent to our analysis of the conspiracy instruction because Instruction No. 3—on its face—instructs the jury on an entirely separate (and uncharged) offense: "attempting to bring contraband into a jail." We recognize that "in a fundamental error analysis jury instructions should be considered as a whole and a failure to

---

[2]For example, the State argues that "the most important" reason why the instructional error in this case is not fundamental is because Defendant invited the error by proffering Instruction No. 3. *See State v. Handa*, 1995-NMCA-042, ¶ 35, 120 N.M. 38, 897 P.2d 225 ("[T]he doctrine of fundamental error has no application in cases where the defendant, by [their] own actions, invites error."). Although the State is correct that Defendant proffered Instruction No. 3, the record clearly indicates that the State proffered Instruction No. 4.

include an essential element in the elements section may be corrected by subsequent proper instructions that adequately addresses the omitted element." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176. However, we do not believe that Instruction No. 3 can function to correct the errors and omissions of Instruction No. 4 because the former is not itself a proper instruction that adequately addresses the omitted element. We view Instruction No. 3 as entirely improper for the purpose of addressing omitted elements from the conspiracy instruction because Instruction No. 3 did not pertain to conspiracy; it pertained to attempt. *See* § 30-28-2 (conspiracy statute); NMSA 1978, § 30-28-1 (1963) (attempt statute). We do not believe that *Cunningham* allows a reviewing court to rely on language from an instruction about one offense to correct misstatements or omissions in an instruction that pertains to a different offense. In *Cunningham*, our Supreme Court considered the instructions pertaining to first-degree murder as a whole; it did not consider instructions pertaining to other offenses. *See* 2000-NMSC-009, ¶¶ 14-22 (declining to reverse the defendant's conviction under fundamental error because although the jury instruction on deliberate-intent first-degree murder improperly omitted the element of unlawfulness, this omission was corrected by a proper self-defense instruction that pertained to the deliberate-intent first-degree murder charge). To extend *Cunningham* to apply to the circumstances here, we would have to presume that the jury failed to understand or failed to comply with Instruction No. 3, which

15

stated that it pertained to "attempting to bring contraband into a jail." Precedent requires us to make the opposite presumption; we must presume "that the jury understood and complied" with the instructions, including Instruction No. 3, *see Britton v. Boulden*, 1975-NMSC-029, ¶ 6, 87 N.M. 474, 535 P.2d 1325, and that the jury therefore did not rely on Instruction No. 3 for an understanding of the elements of the offense of conspiracy. We do not believe that precedent allows us to affirm based on the contents of Instruction No. 3.

{26}     For these reasons, we conclude that the State's arguments do not support affirmance.

## II.     Sufficient Evidence Supports Defendant's Conviction

{27}     Having reversed Defendant's conviction, we must address her sufficiency of the evidence argument because double jeopardy principles would bar retrial if her conviction is not supported by sufficient evidence. *See State v. Sanchez*, 2000-NMSC-021, ¶ 30, 129 N.M. 284, 6 P.3d 486. Our task is to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. We "view[] the evidence in a light most favorable to the verdict, considering that the [s]tate has the burden of proof beyond a reasonable doubt." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. "We do not reweigh the evidence

16

or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

{28}    Although sufficiency of the evidence is ordinarily assessed based on the instructions given to the jury, *see State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883, here both parties ask us to take a different approach because the jury received erroneous instructions. The parties agree that instead of measuring the evidence against the erroneous instruction given to the jury, we should use the actual essential elements of conspiracy as the yardstick. Defendant contends that to do otherwise would present "serious due process concerns" because the misstated instructions "relieve the State of its actual burden of proof." The State says that Defendant's argument on this point is "well taken," and that "[r]ecognizing the faulty instruction with the missing intent element as the 'law of the case' would relieve the State of its burden to prove both that she made the agreement and that she intended by the agreement that a crime be committed."

{29}    To support the approach agreed upon by the parties, Defendant cites several cases in which she contends our appellate courts "reversed convictions where the evidence is legally insufficient based on an interpretation of the law not reflected in the jury instructions." We believe that at least one of these cases—*State v. Stephenson*, 2017-NMSC-002, 389 P.3d 272—provides some support for the

17

parties' proposed approach. In *Stephenson*, our Supreme Court measured the sufficiency of the evidence against the interpretation of the statute that the Court announced in the opinion itself, not based on the incomplete essential elements given to the jury at trial. *See id.* ¶¶ 2, 12-28; *see also id.* ¶ 12 ("The question we must address is whether the evidence was sufficient to convict Defendant of abandonment resulting in great bodily harm. The answer to this question depends on the scope intended by the Legislature for the crime of abandonment."). *Stephenson* seems to support the approach proposed by Defendant and conceded by the State—that we should look to the actual legal definition of the charged offense.

{30} But this Court reached the opposite conclusion in a case cited by neither party, *State v. Rosaire*, 1996-NMCA-115, 123 N.M. 250, 939 P.2d 597. In *Rosaire*, this Court reversed the defendant's conviction because the jury was not instructed on an essential element, but we nevertheless "review[ed] the sufficiency of the evidence in light of the erroneous jury instruction." *Id.* ¶ 20. As such, *Rosaire* appears to be in tension—at least to some degree—with *Stephenson*, which our Supreme Court decided two decades after this Court decided *Rosaire*.

{31} *Rosaire* also appears to be in tension with an opinion issued by the United States Supreme Court after *Rosaire* was decided. *See Musacchio v. United States*, 577 U.S. 237, 243 (2016) (holding that "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency

challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction"). In *Musacchio*, the United States Supreme Court explained that the purpose of sufficiency analysis is to protect a defendant's right to due process and that the focus should therefore be on whether "the government's case was so lacking that it should not have even been submitted to the jury." *Id.* (internal quotation marks and citation omitted). Accordingly, an appellate court conducting a sufficiency review is only concerned with the "legal" question related to the elements of the charged crime, and this "limited determination . . . does not rest on how the jury was instructed." *Id.* The United States Supreme Court concluded that the law-of-the-case doctrine did not apply, stating that an appellate court conducting a sufficiency review "is not bound by district court rulings under the law-of-the-case doctrine." *Id.* at 245.

{32} But the parties have not addressed *Rosaire* or its apparent tension with other precedents, and we therefore lack developed arguments about the legal question before us—a question of constitutional magnitude that arises often on appeal. Under these circumstances, we do not believe it would be prudent to answer this legal question in Defendant's appeal. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be") (citation omitted); *Elane Photography, LLC v. Willock*, 2013-NMSC-

19

040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for [an appellate court] to promulgate case law based on [its] own speculation rather than the parties' carefully considered arguments.").

{33} However, the absence of adequate briefing on this legal question does not prevent us from reaching the merits of Defendant's sufficiency argument because we conclude that the evidence suffices even under the standard advocated for by the parties—a standard that ensures that Defendant's constitutional rights are protected even if *Rosaire*'s law of the case approach is incorrect. We believe that a reasonable jury could find, based on the evidence presented at trial, that the State proved the actual essential elements of conspiracy: (1) that Defendant and another person by words or acts agreed together to commit bringing contraband into the jail; and (2) that Defendant and the other person intended to commit bringing contraband into the jail. *See* UJI 14-2810; *Baca*, 1997-NMSC-059, ¶ 51. We begin with the recorded conversations. In the first, Mr. Gutierrez said that an unnamed person would be calling Defendant to "give [her] a rundown on some stuff," a subject about which Defendant "already kn[e]w." Defendant answered, "Yeah." Later, Mr. Gutierrez told Defendant that this unnamed person would tell her "how it's going to go, how you do it, where to do it." In the same conversation, Mr. Gutierrez told Defendant that she would need to "borrow [a friend's] baby" so that Defendant could "go to the men's room for [Mr. Gutierrez]," or to get "somebody that can do it." In the second

conversation, which occurred the day after the contraband was found in the urinal, Defendant spoke to Mr. Gutierrez about some "balloons" that she had ordered, and said, "I think something happened to the order, it didn't go through." These conversations struck the jail's chief of security as suspicious because the callers used vague and unnatural language that was potentially a coded discussion of the alleged conspiracy. Further circumstantial evidence is found in Defendant's testimony that she picked up a box from a third party, drove that box to the courthouse, and that the contents of that box were then left in the courthouse bathroom where the contraband was discovered. Viewing all of this evidence in the light most favorable to the guilty verdict, we conclude that a jury could reasonably infer that Defendant intentionally agreed with others to bring contraband into the jail and that she acted with the intent to bring contraband into the jail. *See State v. Ross*, 1974-NMCA-028, ¶ 13, 86 N.M. 212, 521 P.2d 1161 (recognizing that a conspiracy "may be established by circumstantial evidence"). Although Defendant presented evidence that might have supported acquittal, the jury was free to reject her version of the facts. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{34}    We hold that sufficient evidence supports Defendant's conviction and that double jeopardy principles do not bar retrial.

**CONCLUSION**

{35}    We reverse Defendant's conviction and remand for retrial.

{36} **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation**

22